IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-03128-01-CR-S-RK |
| ) | |
| TRACY TODD PRESSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Defendant Tracy Todd Presson's Motion to Suppress Evidence and Statements. (Doc. 55.) Defendant moves to suppress (1) three silencers that were found in a safe during the execution of a search warrant, and (2) papers and an envelope seized from his jail cell.[1] On October 15, 2019, Magistrate Judge David P. Rush held an evidentiary hearing on the Motion to Suppress. Following the hearing, Judge Rush issued a Report and Recommendation ("R&R") that recommended suppressing the silencers but not the papers and envelope. (Doc. 86.) The Government and Defendant then filed objections to the R&R. (Docs. 88, 92.) Upon an independent review of the record, the Court **ADOPTS** the recommendation not to suppress the papers and envelope but concludes that the silencers should not be suppressed. Consequently, Defendant's Motion to Suppress is **DENIED** in its entirety.

### Background[2]

On October 2, 2018, the Ozark County Sheriff's Office received a report that Defendant had been engaging in sexually explicit activity with a minor. The minor reported that Defendant had forced her to engage in sexual activity on numerous occasions at 414 Tiki Trail, Gainesville, Ozark County, Missouri. The minor also reported that Defendant would photograph and/or video record the sexual activity on a camera and then transfer the data to a laptop computer that Defendant kept in his bedroom.

---

[1] The parties describe the silencers as "alleged silencers" and "homemade firearm silencers." For clarity and for the purpose of this Order only, the Court will refer to the three objects as silencers.

[2] All of the facts are set forth in the transcript of the suppression hearing, in the R&R, and in the parties' briefs. The facts are duplicated below only to the extent necessary.

On October 26, 2018, Officer Joe Neuschwander ("Neuschwander") applied for and obtained a federal search warrant to search the Tiki Trail residence, including outbuildings.[3] Among other things, the search warrant included "digital storage devices" and "flash drives" that could contain child pornography. (Doc. 68-1 at 4, ¶ 1.)[4] Before executing the search warrant, Neuschwander explained to members of the search team that the warrant listed large computer hardware as well as very small digital devices. Neuschwander testified that flash drives "are finger-sized" and "a micro SD card is basically half an inch by three-quarters of a[n] inch." (Doc. 80 at 16.) Brian McNulty ("McNulty"), Supervisory Agent for Homeland Security Investigations, was a member of the search team. McNulty similarly testified that a flash drive or SD card can be "as small as a postage stamp." (*Id.* at 35.)

Officers executed the warrant on October 30, 2018. While the search warrant was being executed, Officer McNulty was asked to take a look at items found inside a safe in the garage. Upon looking at three cylindrical metal objects, McNulty had a "strong suspicion[]" that the objects were silencers. (*Id.* at 42.) McNulty had this belief because each object had a threaded center, and at least one had "a hole on the end of the end cap." (*Id.*) Upon further examination, one of the objects also "felt like it had something inside of it[.]" (*Id.*) Additionally, McNulty could not locate a serial number on any of the objects. (*Id.* at 37.)

At that time, McNulty contacted the Bureau of Alcohol, Tobacco, and Firearms ("ATF") to confirm the objects were silencers and to determine whether Defendant could lawfully possess them. (*Id.* at 36-38.) Based on McNulty's description, the ATF believed that the objects were silencers. (*Id.* at 38.) The ATF also informed McNulty that a silencer must contain a serial number in order to be lawfully registered. (*Id.* at 43.) McNulty then seized the silencers as unregistered firearms.

Defendant was arrested and detained in the B Pod of the Ozark County Jail. The B Pod includes sleeping cells and a separate common living area with a table and television. (*Id.* at 51.) On November 15, 2018, medical personnel were called for assistance in the B Pod. A jailer found

---

[3] This was not the first search warrant executed at the property. Prior warrants uncovered images and videos of alleged child pornography, including of the minor who made the initial report. The October 26 search warrant was intended to "recover [a] missing hard drive and any other items which were missed during the first search warrant." (Doc. 80 at 12).

[4] Any citation to a page number refers to the pagination automatically generated by CM/ECF.

Defendant with blood on his face and hands and he appeared incoherent. At that time, Defendant was the only individual being held in the B Pod.

While waiting for medical assistance, Corporal Curtis Dobbs saw several papers and an envelope on the table in the jail pod. On the top of one page, the words "Reason I Killed Myself" were written. On the top of the page numbered "5," the word "Confession" was written. Another paper stated "My Story." None of the documents or envelope indicated that they were legal mail, that they were intended to be protected by the attorney-client privilege, or that they were otherwise privileged. Further, Defendant did not make any comment that the papers or envelope were to be mailed or provided to his attorney. The officers seized the papers and envelope.

On March 27, 2019, a Superseding Indictment charged Defendant with nine counts. (Doc. 23.) The counts include receipt and distribution of child pornography, and unlawful possession of a firearm silencer that did not bear a manufacturer's mark or serial number, and that was not registered to Defendant in the National Firearms Registration and Transfer Record. On July 26, 2019, Defendant filed the pending Motion to Suppress. Defendant moves to suppress the three silencers and the papers and envelope found at the jail. Following an evidentiary hearing, the R&R recommended granting in part and denying in part the Motion to Suppress. (Doc. 86.)

The R&R first found that the search of the safe was lawful because it could contain the digital devices described in the search warrant. However, the R&R concluded that the silencers found in the safe were unlawfully seized because they were not listed in the search warrant. The R&R then rejected the Government's argument that the plain-view doctrine authorized the warrantless seizure. (*Id.* at 7-10.) The R&R reasoned that:

> the nature of the alleged silencers and their association to criminal activity was not immediately apparent at the moment they were observed. Agent McNulty had a 'strong suspicion' the objects 'looked like silencers' but, by his own admission, he contacted the ATF for 'assistance' to determine '*if* what [he] was looking at actually was [a] kind of suppression device,' and whether they were lawfully possessed . . . McNulty was not able to locate any serial numbers, could not determine if they were lawfully possessed, and seized the devices so ATF could confirm if they were properly registered . . . a silencer is not incriminating merely because it is associated with weapons.

(*Id.* at 8) (emphasis in original).

The R&R then found that the search and seizure of papers and envelope in the B Pod did not violate Defendant's Fourth, Fifth, or Sixth Amendment rights. The R&R recognized that these documents were found in a common area of the B Pod, and not in Defendant's cell. The R&R

3

determined that "the evidence does not demonstrate the Government unreasonably infringed [Defendant's] right to privacy or compelled him to make incriminating statements, or that his communications were intended for an attorney." (*Id.* at 10.)

The Government and Defendant both filed objections to the R&R. (Docs. 88, 92.) The Government objected to the recommendation to suppress the three silencers. The Government argues that the silencers fell within the scope of the search warrant, and alternatively, that the search and seizure was constitutional under the plain-view doctrine. Defendant objected to the recommendation that the papers and envelope should not be suppressed. The following discussion resolves the issues raised by the parties.

## Discussion

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court has discretion to review issues not raised in an objection to this Court. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Upon an independent review of the record, the applicable law, and the parties' arguments, the Court makes the following rulings.

**I. The Search and Seizure of the Silencers Was Constitutional.**

**A. The Court Adopts the Portion of the R&R That Found the Search of the Safe Fell Within the Scope of the Search Warrant.**

First, the Court agrees with the R&R that the search of the safe itself fell within the scope of the search warrant. As explained in the R&R, "Defendant does not challenge the validity of the search warrant, which listed numerous items to be seized, including small digital devices and records that feasibly could have been hidden inside a safe." (Doc. 86 at 6.) "Because the warrant authorized the search of items that can obviously fit into small spaces and containers and, therefore, could be hidden in numerous locations in a residence, law enforcement acted within the scope of the warrant when they searched the safe for the digital storage items." (*Id.*) (citations and quotations omitted).)[5] Consequently, the Court adopts the portion of the R&R which found that the search of the safe was constitutional.

---

[5] The R&R further recognized that "Defendant, in fact, acknowledges the 'initial intrusion may have been lawful since the investigating officers were acting pursuant to a search warrant allowing a search of the premises.'" (Doc. 86 at 7 n.4 (citing and quoting Doc. 55 at 6).)

4

**B. The Court Finds that the Search and Seizure of the Silencers Fell Within the Scope of the Search Warrant.**

Second, the Court finds that the silencers fell within the scope of the search warrant.[6] To determine "whether a search exceeded the scope of a warrant, we look to the fair meaning of the warrant's terms." *United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) (quotations and alterations omitted). Once the terms are ascertained, "[a] lawful search extends to all areas and containers in which the object of the search may be found." *United States v. Schmitz*, 181 F.3d 981, 988 (8th Cir. 1999.)

Here, the terms of the search warrant included "digital storage devices" and "flash drives" that could contain child pornography. (Doc. 68-1 at 4, ¶ 1.) As explained by Neuschwander and McNulty, these devices could be as small as a postage stamp. (Doc. 80 at 35.) Therefore, the scope of the warrant included "all areas and containers" capable of storing such devices. *Schmitz*, 181 F.3d at 988.

Because the silencers were hollow and could potentially house a small storage device, the officers were entitled to inspect, manipulate, and examine them. *See United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) (finding search authorized because "[t]he space . . . was sufficiently large to permit any of the listed items to be stored there"). McNulty explained that the silencers had "a threaded hole in the middle" and "at least one of them felt like it had something inside of it[.]" (Doc. 80 at 42.) Under these facts, the officers did not exceed the scope of the search warrant by searching and seizing the three silencers. *Weinbender*, 109 F.3d at 1330; *see also United States v. Crawford*, 220 F. Supp. 3d 931, 938 (W.D. Ark. 2016) (finding search within scope of warrant because "the objects identified by the search warrant were small—flash drives can be mere centimeters long—so executing the warrant necessitated a thorough search").

Because the search and seizure was lawful, McNulty had authority to inspect the objects for a serial number or lack thereof. *See United States v. Watts*, 7 F.3d 122, 127 (8th Cir. 1993) ("Having obtained lawful possession of the firearms, Officers Sporny and Yellow Bird were free to take down the serial numbers."). It was also permissible for McNulty to contact ATF to confirm the identity of the objects and whether Defendant lawfully possessed them. *Id.* ("Checking the guns' registration via the police radio provided a relatively quick, effective method of determining

---

[6] The R&R briefly addressed the threshold question of whether the seizure of the silencers fell within the scope of the search warrant. The R&R instead focused on whether the seizure was lawful under the plain-view doctrine. That issue is addressed below.

5

whether the collection of items in the van might be stolen."). For all these reasons, the Court finds that the search and seizure of the silencers fell within the scope of the search warrant.

### C. The Court Finds that the Plain-View Doctrine Applies to the Silencers.

Third, assuming the scope of the warrant did not extend to the silencers, the Court finds that the plain-view doctrine is applicable. "Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Brown*, 653 F.3d 656, 661 (8th Cir. 2011) (quotations omitted). The "immediately apparent" factor is satisfied when "the officer performing the search has probable cause to believe an item is incriminating." *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010) (quotations omitted). "Probable cause does not require absolute certainty; it only requires that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime." *Id.*

The R&R found, and the Court agrees, that the officers were in a lawful position to observe the silencers and to access the inside of the safe. (Doc. 86 at 7.) However, the R&R determined that the incriminating nature of the silencers was not immediately apparent. The R&R explained that the officers "had a lack of knowledge regarding whether the alleged silencers were in fact silencers[.]" (*Id.* at 10.) The R&R further found that:

> other than to suggest a silencer by its very nature is incriminating, the Government does not point to any facts demonstrating the officers had probable cause to associate the alleged silencers with a crime prior to removing the objects from the safe, searching them for a serial number and conferring with ATF about their nature and the legality of their possession. For the same reasons an officer cannot seize a gun anytime they observe it, a silencer is not incriminating merely because it is associated with weapons.

(*Id.* at 8.)

The Court does not agree with these conclusions. First, the officers were not required to know with certainty that the objects were silencers. McNulty testified that he had "strong suspicions" the objects were silencers. (Doc. 80 at 42.) His suspicion was based on the physical appearance of the objects, including a threaded center and a hole at the end of the cap. (*Id.*) Based on these facts, McNulty had probable cause to believe the objects were silencers.

6

Second, the incriminating nature of the silencers was immediately apparent. Courts have recognized that "[s]ilencers are not used in recreational pursuits but are usually associated with the use of guns in criminal endeavor." *United States v. Padilla*, 819 F.2d 952, 962 (10th Cir. 1987); *see also Weinbender*, 109 F.3d at 1330-31 (holding that "the seizure of the homemade silencer was justified under the plain-view doctrine"); *United States v. Kayfez*, 957 F.2d 677, 679 (9th Cir. 1992) (recognizing that "one rarely possesses a silencer for 'sport, recreation, or collection' or for any other lawful use").[7] As with sawed-off shotguns, the possession of a silencer, "properly registered to its owner, is not contraband, but its lawful possession is, in ordinary experience, rare indeed." *United States v. Truitt*, 521 F.2d 1174, 1177 (1st Cir. 1975) (discussing sawed-off shotguns). As recognized by these cases, McNulty's "strong suspicion" that the objects were silencers gave him probable cause to believe that Defendant did not lawfully possess them.

In addition to the inherently suspicious nature of silencers, the silencers here did not have serial numbers in violation of federal law. Specifically, it is unlawful for a person to possess a silencer that does not have a serial number or that is not registered in the National Firearms Registration and Transfer Record. *See* 26 U.S.C. § 5861(d), (g), (h), (i); *see also* 26 U.S.C. § 5845(a)(7) (defining silencers as a firearm). McNulty was not required to know the exact contours of the applicable statutes or have "absolutely certainty" that the silencers were contraband; the law only requires enough facts that "would warrant a belief that [the silencers] may be contraband." *Muhammad*, 604 F.3d at 1027. That standard is satisfied here. Finally, the plain-view doctrine is not negated simply because McNulty contacted ATF to confirm the nature of the objects and whether they were lawfully possessed. *United States v. Cecil*, 457 F.2d 1178, 1180 (8th Cir. 1972) ("A requirement that an officer must know the fact of nonregistration before seizing a contraband firearm would stultify the enforcement of the National Firearms Act."). Consequently, the Court finds that the plain-view doctrine authorized the search and seizure of the silencers.

**II. The Search and Seizure of the Papers and Envelope Was Constitutional.**

Defendant objects to the recommendation "of the Magistrate in denying Defendant's motion to suppress papers seized from Defendant while in jail custody[.]" (Doc. 88 at 2.) Upon an independent review of the record and applicable law, the Court overrules this objection. For

---

[7] The R&R recognized that a silencer may be lawfully possessed and noted a lack of evidence that the silencers were homemade. (Doc. 86 at 8 n.5, 9.) However, as recognized by the case law cited herein, silencers are much different in nature than more common firearms (e.g., handguns), and are less likely to be lawfully owned. This is particularly true when, as here, the silencers did not contain a serial number.

the reasons stated in the R&R, the Court does not find a basis to suppress the papers and envelope seized from the jail. (Doc. 86 at 10-13.) Consequently, the Court adopts the portion of the R&R which recommends denying Defendant's motion to suppress the papers and envelope.[8]

## Conclusion

For the foregoing reasons, it is hereby ORDERED that:

(1) the Court **REJECTS IN PART** and **ADOPTS IN PART** the Magistrate's Report and Recommendation (Doc. 86); and

(2) the Court **REJECTS** the recommendation to suppress the three silencers; and

(3) the Court **ADOPTS** the recommendation that the papers and envelope seized from jail should not be suppressed; and

(4) based on the foregoing rulings, Defendant's Motion to Suppress Evidence and Statements (Doc. 55) is **DENIED** in its entirety.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 4, 2020

---

[8] The R&R noted that Corporal "Dobbs acknowledged he looked inside the envelope for the first time while he was preparing for th[e] evidentiary hearing and discovered a business card to an attorney." (Doc. 86 at 5 n.3.) However, the mere presence of this business card is not indicia of a constitutional violation. As stated, the Court agrees with the R&R's analysis which explains why the papers and envelope should not be suppressed.